Honorable Mary Alice Theiler

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROPET USA, INC.,

                    Plaintiff,

    v.

LLOYD SHUGART

                    Defendants.

Case No. C06-0186 MAT

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**Note for Consideration:
July 13, 2007**

        This case involves photographs of shoes.  Plaintiff Propet USA, Inc. ("Propet") brings this motion for summary judgment asking the Court to find that Propet is licensed to use the photographs Propet paid the defendant Lloyd Shugart ("Shugart") to take.  This motion follows Propet's earlier motion for summary judgment that was denied by the Court.  At that time, the Court indicated that certain issues raised by Propet were premature because discovery had not closed.  Propet incorporates herein the exhibits made of record in connection with Propet's earlier motion.

## I. UNDISPUTED FACTS

        The undisputed material facts are as follows:

        1.        On several dates between approximately 1999 through 2005 Shugart was retained by Propet to create photographs to be used by Propet in various advertising materials.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SEADOCS:279990.1

1

VANTAGE LAW PLLC
355 NW GILMAN BLVD, SUITE 203
ISSAQUAH, WA 98027
(425) 391-8741

1   Shugart created many sets of photographs that Shugart delivered to Propet and then Propet used them

2   to advertise Propet's products ("shoes").  *See* Declaration of Lloyd Shugart ¶ 3, Docket No. 32.

3          2.      Shugart admits that Propet collectively paid Shugart over $100,000 for his

4   services.  *See* Shugart's Answer and Counterclaim ¶ 9, Docket No. 13.

5          3.      According to Shugart, the only written instruments exchanged between

6   Shugart and Propet were Shugart's invoices and a "film delivery memo."  *See* Declaration of Lloyd

7   Shugart ¶¶ 6-7, Docket No. 32.

8          4.      Shugart testified that he delivered film to Propet in a "sealed" package that

9   bore a notice indicating that use of Shugart's film was subject to the terms of the "film delivery

10  memo."  *See* Shugart Deposition Transcript at pp. 123-127 attached as Exhibit B to Kaser

11  Declaration, Docket No. 43 ("Shugart Dep.").

12         5.      Shugart also testified that he mailed the "film delivery memo" to Propet with

13  his invoice.  *Id.* at p. 127.

14         6.      Shugart testified that he has no evidence that Propet acknowledged the terms

15  of the "film delivery memo" in writing.  *Id.* at pp. 71 and 162.

16         7.      Shugart testified that he could not explain how much extra money he would

17  have charged Propet for the unauthorized uses he claims Propet made in violation of Shugart's "film

18  delivery memo," even if Propet is bound by the memo's terms.  *Id.* at 106-114.

## II. <u>ARGUMENT</u>

As Propet indicated in its earlier motion for summary judgment, this case involves an

unreasonable assertion of technical rights by a photographer following termination by his client.

### a.      <u>THE STANDARD FOR SUMMARY JUDGMENT.</u>

Summary judgment may be used to avoid useless, expensive, and time-consuming

trials where there is no genuine issue of fact remaining to be tried.  Summary judgment is not "a

disfavored shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

1    Summary judgment should be granted when there is no genuine issue as to any

2    material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

3    It may be granted when no "reasonable jury could return a verdict for the nonmoving party."

4    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v.*

5    *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("[T]he nonmoving party must come forward with

6

7    'specific facts showing that there is a genuine issue for trial.'")

8                                   **b.     THE ISSUE**

9    Propet and Shugart had a business relationship that was defined by Propet's payment

10   of Shugart's invoices coupled with a course of conduct over several years.  During the period Propet

11   employed Shugart, he was hired to take pictures for Propet's advertising and Shugart then invoiced

12   Propet for his work.

13

14   Shugart confirms that the documents memorializing the relationship consist of (1)

15   Shugart's various invoices submitted to Propet from time to time; and (2) Shugart's purported "film

16   delivery memo." *See* Declaration of Lloyd Shugart, Docket No. 32.  The invoices are routine in form

17   and consist of invoices for services rendered.  They specify no special terms and conditions nor place

18   limits on Propet's use of Shugart's shoe photographs.  On the other hand, the "film delivery memo,"

19   if binding on Propet, imposes numerous terms and conditions.  In Propet's earlier motion, Propet

20

21   contended that these terms and conditions were unreasonable.

22   The essence of the parties' claims and counterclaims in this case center on Shugart's

23   contention that the "film delivery memo" is binding on Propet.[1]  However, Shugart concedes that

24   Propet never acknowledged the terms and conditions of the "film delivery memo," at least in writing,

25   nor did he specifically ask Propet to acknowledge it.  *See* Kaser Decl., Dkt. No. 43, Shugart Dep. at

26   pp. 71 and 162.  Therefore, Shugart seeks to impose these terms and conditions by way of the

27

28   conduct of the parties.  The issue presented to the Court in this motion is as follows:

29          Can a party create binding contractual terms by submitting film to one person,
            indicating that the film is subject to written terms and conditions at the time of film
30

31   _____
     [1] At first Shugart testified the parties had entered into a contract.  This sworn testimony has been
     repudiated by Shugart.

1   delivery, and, rather than obtain written acceptance of the terms, claim
    acknowledgment based on use of the film or independent delivery of written terms
2   with the party's billing invoice?

3       For the reasons that follow, the answer to the question should be "no."  If so, Propet

4   asks the Court to find that (1) Propet has an implied license to use any photographs created by

5   Shugart for Propet prior to Propet's termination of its relationship with Shugart; (2) Propet's license

6   is unrestricted in scope so long as Shugart's photographs are used in the regular course of advertising

7   Propet brand products to the public.

8

9                   c.   __PROPET HAS AN IMPLIED LICENSE__

10      There is no question that the lack of documentation between the parties creates a

11  situation where Shugart is the technical copyright holder of his photographs.  However, in situations

12  of this kind, the 9th Circuit has held that Propet stands in the position of a non-exclusive licensee.  *See*

13  *Effects Associates Inc. vs. Larry Cohen et al.*, 908 F. 2d 555, 558 (9th Cir. 1990).

14

15      In *Effects Associates,* the 9th Circuit found:

16          Effects created a work at defendant's request and handed it over, intending that
            defendant copy and distribute it.*[footnote omitted]*  To hold that Effects did not at the
17          same time convey a license to use the footage in "The Stuff" would mean that
            plaintiff's contribution to the film was "of minimal value," a conclusion that can't be
18          squared with the fact that Cohen paid Effects almost $56,000 for this footage.
            Accordingly, we conclude that Effects impliedly granted nonexclusive licenses to
19          Cohen and his production company to incorporate the special effects footage into
            "The Stuff" and to New World Entertainment to distribute the film.
20

21  *Id.* at 558.

22      The holding in *Effects Associates* provides no specific guidelines concerning the

23  scope of Propet's implied license other than the general guideline that Propet has an unrestricted

24  license to use Shugart's photos for Propet's intended purposes.  Other courts have followed the same

25  general guideline.  *See Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999) (parties

26  conduct indicates that jingle writer granted radio station non-exclusive right to continue playing

27  jingle following termination of relationship between radio station and jingle writer); *Jacob Maxwell,*

28  *Incorporated v. Veeck et al.*, 110 F.3d 749 (11th Cir. 1997) (songwriter created song at defendant's

29  request and handed a master tape over, intending that defendant play the song at games).

30

31

Since Shugart's business invoices place no limits on Propet's use, and the holding in *Effects Associates* means that Propet is licensed, Shugart independently seeks to impose limits via his "film delivery memo." Shugart can point to no legal authority that imposes these additional terms on Propet as a binding contract under the circumstances, even when giving Shugart the benefit of the doubt as to the facts.

First, Shugart concedes that he has no written acknowledgment from Propet. Therefore, in order to bind Propet to the "film delivery memo," Shugart must necessarily claim that Propet is bound because Shugart delivered film to a Propet employee. Shugart has been ambiguous, at best, concerning whether he physically delivered the "film delivery memo" to the employee every time he delivered film. However, Shugart testified that he mailed it to Propet along with his invoice. This course of conduct is not sufficient to bind Propet to the terms of the memo.

The Federal Courts appear to the uniform in holding that state law applies to contract terms involving copyright license, unless a federal statute specifically applies to an applicable contract term. *See e.g., Rano v. Sipa Press Inc.*, 987 F.2d 580 (9th Cir. 1993) (mere allegation of breach of contract does not create federal jurisdiction even if the contract involves copyright). There are no federal statutes that apply here with respect to limitations on Propet's use of Shugart's photographs. Accordingly, under Washington State law, Shugart has the burden of proving that Propet accepted the additional terms and conditions of his "film delivery memo." *See Eskay Plastics, Ltd. v. Chappell,* 34 Wash.App. 210, 214 (1983) ("We hold that the burden of proof of the existence of these conditions rests on the party who will benefit therefrom").

Shugart cannot bind Propet to the "film delivery memo" unless he has evidence that Propet clearly accepted it. Shugart has no such evidence. Beyond that, there is no fact dispute that Shugart handed over photographs for use in Propet's advertising and was paid for the photographs. To hold that Shugart did not convey a license to Propet, allowing Propet to make reasonable use of what are largely stock photographs of shoes (*see* Shugart's Answer and Counterclaims in this Action, Exhibit A), would mean that Propet paid Shugart over $100,000 to receive no benefit at all.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT                    5
SEADOCS:279990.1

VANTAGE LAW PLLC
355 NW GILMAN BLVD, SUITE 203
ISSAQUAH, WA 98027
(425) 391-8741

### III. <u>CONCLUSION</u>

The law is clear that Shugart holds the copyright to his photographs of Propet's shoes, but Propet nevertheless has an ongoing license right to use them.  For the foregoing reasons, Propet respectfully requests that summary judgment be entered in Propet's favor, and that the court enter the following order:

1.     Propet has an implied license to use any photographs created by Shugart for Propet prior to Propet's termination of its relationship with Shugart;

2.     Propet's license is unrestricted in scope, so long as Shugart's photographs are used during the regular course of advertising Propet brand products to the public, and Propet may convey Shugart's photographs to others who advertise Propet brand products and make substantially the same use of Shugart's photographs as Propet; and

3.     Shugart's counterclaims against Propet are dismissed with prejudice;

DATED this 18th day of June, 2007.

VANTAGE LAW PLLC

*/s/ Bruce A. Kaser*
Bruce Kaser, WSB No. 13532
Vantage Law PLLC
355 N.W. Gilman Blvd., Suite 203
Issaquah, WA  98027
(425) 391-8741
Attorneys for Plaintiff

James Phillips, WSB No. 13186
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101 – 2352
Direct: (206) 622 – 8484
Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          6
SEADOCS:279990.1

VANTAGE LAW PLLC
355 NW GILMAN BLVD, SUITE 203
ISSAQUAH, WA 98027
(425) 391-8741

<u>**CERTIFICATE OF SERVICE**</u>

1

2      I hereby certify that on the 18th day of June, 2007, I electronically filed

3  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court, using the

4  CM/ECF system which will send notification of such filing to:

5

6              Philip P. Mann
               MANN LAW GROUP
7              1420 Fifth Avenue, Suite 2200
               Seattle, Washington  98101
8              mannlaw@comcast.net
               phil@mannlawgroup.com
9              eryn@mannlawgroup.com

10      DATED this 18th day of June, 2007.

11

12                              */s/ James L. Phillips*
                                James L. Phillips
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31