Honorable Mary Alice Theiler

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROPET USA, INC., <br><br>   Plaintiff, <br><br>  v. <br><br>LLOYD SHUGART, <br><br>   Defendant. | Case No. C06-0186 MAT <br><br> PROPET USA, INC.'S TRIAL BRIEF |

Propet USA, Inc. ("Propet") respectfully submits its Trial Brief. Propet contends it has a license to use Defendant Lloyd Shugart's ("Shugart") shoe photographs for reasonable business purposes and this license is not limited by the terms and conditions of the "film delivery memo." Even if Propet was bound by the "memo," Propet did not breach the limitations of the memo and therefore did not commit copyright or other infringements. Further, Shugart has submitted no evidence that Propet knowingly removed any "copyright management information" from digital photographs or failed to return any original film or negatives. Similarly, Shugart has no evidence that his photographs were "lost" or "stolen." Finally, Shugart's claims are barred by his failure to obtain copyright registrations in a timely fashion, waiver, unclean hands, and the statute of limitations.

PROPET USA, INC.'S TRIAL BRIEF - 1
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

A.  **PROPET RECEIVED AN IMPLIED LICENSE TO USE SHUGART'S PHOTOGRAPHS; THE IMPLIED LICENSE PERMITS REASONABLE BUSINESS USES; PROPET DID NOT LIMIT THE IMPLIED LICENSE RIGHT BY AGREEING TO THE TERMS AND CONDITIONS OF THE "FILM DELIVERY MEMO"**

Over a period of many years Propet paid Shugart over $180,000 to create photographs of Propet brand shoes so that Propet could use these materials in Propet's advertising. These photographs would not have been created except that Propet hired Shugart to do it. Shugart did not come to Propet offering to sell photographs from an existing Shugart portfolio of photographs.

Propet made the mistake of hiring Shugart as an independent contractor and not obtaining a writing from him before paying him. A writing would have made Propet the owner of the copyright to the photographs Shugart was paid to take. As a consequence of its mistake, Propet gave Shugart the opportunity to claim copyright and other kinds of infringements when Propet terminated its relationship with Shugart. The dispute among the parties arose when Propet asked Shugart to provide an estimate before hiring him for further projects.

The parties dealt with each other for years on an invoice basis. Until Shugart began threatening Propet with copyright infringement, Propet believed it was the legal owner of Shugart's photographs. As Propet previously conceded, because Propet hired Shugart as an independent contractor, and not a direct employee, he is the technical copyright holder pursuant to law, leaving Propet as an implied licensee. Even so, Propet has an implied nonexclusive license to use the photographs for reasonable business purposes.

Rather than acknowledge Propet's implied license, Shugart contends that he delivered a "Film Delivery Memorandum" ("memo" herein) to Propet that created an express and limited license rather than an implied license. Shugart's delivery of the memo was unconventional, however, if he delivered it at all.

PROPET USA, INC.'S TRIAL BRIEF- 2
(C06-0186 MAT)

**MILLER NASH** LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

SEADOCS:292414.1

According to Shugart, he claims only that he delivered film to Propet with a printed "seal" that included verbiage that Propet's use and license were subject to terms of a "film delivery memo" that Shugart did not deliver with the film. The complete statement of terms allegedly attached to the film box or film package are set forth below:

> Notice:
>
> All film and or images contained herein are the exclusive property of Lloyd Shugart, to which Lloyd Shugart retains and holds all rights under copyright laws.
>
> Client use and license is subject to all terms of the FILM DELIVERY MEMO.
>
> Terms shall be deemed by Client as acknowledged by written approval and/or the use of photographs provided by Photographer.

*See* Dkt. No. 63 at ¶ 8.

Unless Shugart backtracks on his deposition testimony, Shugart provided nothing else to Propet when he delivered the film. That is, he did not give Propet the "memo" at the same time as the photographs so that its terms could be reviewed before breaking the "seal." There is no evidence that the "film delivery memo" was on the box, in the box, near the box, or otherwise given to the Propet employee who received the film. Shugart has never disputed this nor indicated otherwise.

Rather than provide the memo to the employee who received the film, Shugart instead claims that he mailed the memo to Propet with Shugart's business invoices – which means that the terms were mailed to Propet's general address after the box was delivered. Shugart testified under oath that he delivered the memo to Propet in that way. *See* Dkt. No. 45, Ex. B at 36-37. Shugart's business invoices make no mention of the memo or other limitations imposed on Propet. While copies of the invoices exist, neither party has copies of invoices that were accompanied by the alleged memo.

The memo spells out material terms and conditions, not on the "seal," that Shugart now seeks to impose on Propet. These terms include limits on time and whether Propet

PROPET USA, INC.'S TRIAL BRIEF- 3
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

1  had the right to provide product pictures to third parties for their use in advertising Propet's shoe
2  products.  By physically separating the delivery of material contract terms and conditions (in the
3  form of the more detailed memo) from the alleged act of implied assent to those terms (opening
4  the film box provided to the Propet employee earlier), Shugart also separated this case from all
5  others.
6           In software licensing cases, for example, it is clear that the party who was to be
7  bound by the act of implied assent at least had the opportunity to review the terms and conditions
8  of the contract at the time the act of implied assent occurred.  Having the opportunity to review
9  terms and conditions at the same point in time as the act of assent means that the party bound by
10 the assent had the opportunity to *reject* unreasonable terms and conditions as well as accept
11 them.
12          If, for example, the Propet employee had been provided with a copy of the "film
13 delivery memo" at the same time he received the film, he would have had an opportunity to note
14 things like time limits, purported limits on third party use, and those parts of the memo that
15 might be appropriate for some kinds of things but not appropriate for shoe pictures intended for
16 catalogs.
17          Shugart argues that the terms of the memo control while ignoring the case law
18 that states that such licenses are not enforceable if their terms are objectionable or
19 unconscionable.  *ProCD Inc. v. Zeidenberg,* 86 F. 3d 1447,1449 (7th Cir. 1996).  Anyone who
20 reads the "memo" will instantly recognize one-sided and unreasonable terms that no business
21 person would agree to.
22          Shugart does not dispute the fact that Propet never signed the memo.  He also
23 concedes the fact that he never asked Propet to acknowledge its terms:
24          Q.    Have you ever received any written approval from Propet
                 for the film delivery memo?
25
26

PROPET USA, INC.'S TRIAL BRIEF- 4
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

> A. No. All I -- All I received was the continued use and hiring to do future jobs.

See Shugart Dep. Transcript at 71 and 162.

Shugart, at his deposition, also testified, under oath:

> Q. Mr. Shugart, the limitations of use, do you believe that it is the photographers obligation to inform the purchaser of the images of any limitations of use?
>
> A. No. I believe it is my responsibility to tell them what they can use them for….

*Id*. at 135-36. Shugart concedes he never informed Propet of the limitations of use. *Id.* at p. 162.

This point is critical because as the Court in *Specht v. Netscape Communications Corp.*, 150 F. Supp. 2d 585 (S.D.N.Y. 2001) held, in a similar situation:

> The case law on software licensing has not eroded the importance of assent in contract formation. Mutual assent is the bedrock of any agreement to which the law will give force. Defendants' position, if accepted, would so expand the definition of assent as to render it meaningless.

*Id.* at 596.

Rendering assent meaningless is precisely what Shugart is attempting to do in this case.

The factual circumstances relating to whether the "memo" is enforceable is different from the factual circumstances present in *Arizona Retail Systems, M.A. Mortensen Co*. and the other cases that have been cited in this litigation. *See e.g., Arizona Retail Sys. v. Software Link, Inc.*, 831 F. Supp. 759 (D. Arizona 1993); *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819 (1999). In general, these cases involve situations where parties sought to enforce contract terms by implying assent to terms because a party used a product, or broke open a package, or did something similar. *Id.*

Because these cases indicate that assent can be implied by "breaking open the package" or "breaking the seal," and because there may be evidence that a Propet employee

PROPET USA, INC.'S TRIAL BRIEF- 5
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

1. broke open a seal on a box of film delivered by Shugart, he claims that the act of "breaking the
2. seal" binds Propet to the terms and conditions of a contract (the "film delivery memo") that he
3. alleges he subsequently delivered to Propet with his billing invoice.
4.     The software licensing cases indicate that assent to contract terms can be implied
5. when a party breaks open a package.  However, the Court will note that these cases have a
6. common thread: in each of these cases, the contract terms and conditions were physically printed
7. *on* the package that contained the product, or were physically delivered *with* the package that
8. contained the product, or were *inside* the box with the product when it was delivered.  Unlike the
9. present case, the party breaking open the package had an opportunity to review the terms of the
10. contract beforehand.  See e.g. *Arizona Retail Sys. v. Software Link, Inc.*, 831 F. Supp. 759 (D.
11. Arizona 1993) (provisions in a license agreement accompanied each delivery of software); *M.A.
12. Mortenson Co. v. Timberline Software Corp.*, 93 Wash. App.  819 (1999) (a form license
13. agreement that is shipped with the diskettes); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d
14. 91, 93 (3rd Cir. 1991) ("The 'Limited Use License Agreement' printed on a package containing a
15. copy of a computer program raises the central issue in this appeal."); *Puget Sound Fin. v.
16. Unisearch*, 146 Wash. 2d 428 (2002)("We are now asked to determine whether limitations on
17. consequential damages *presented in regular invoices* for the purchase of commercial services
18. can be enforced against a business purchaser.")(emphasis added); *I. Lan Sys. v. Netscout Serv.
19. Level Corp.*, 183 F. Supp. 2d 328, 330 (D. Mass. 2002) (terms of "click wrap" license were
20. contained on the software itself and had to be scrolled through before clicking "accept"); *ProCD,
21. Inc. v. Zeidenberg,* 86 F.3d 1447 (7th Cir. 1996)( the license was "encoded on the CD-ROM
22. disks as well as printed in the manual, and which appears on a user's screen every time the
23. software runs…").
24.     In the present case, Shugart wishes to impose the terms of the "memo" on Propet
25. via a contracting mechanism that is close to fraud.  Rather than give terms *with* product delivery
26. he physically separated terms *from* delivery by providing them at a later time.  If he ever

PROPET USA, INC.'S TRIAL BRIEF- 6
(C06-0186 MAT)

**MILLER NASH** LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

SEADOCS:292414.1

provided the memo at all, he created a situation where the alleged act of assent was physically separated from the assenter's ability to view material terms and conditions. If this Court holds that this type of contracting mechanism is viable it will open a Pandora's box.

Propet agrees that Shugart is the copyright owner of the photographs Propet paid him to take under the applicable legal guidelines - because Propet failed to obtain a writing that transfers Shugart's works to Propet. However, Propet should be allowed to continue using photographs it paid Shugart to take (i.e., a nonexclusive license) according to the 9th Circuit's holding in *Eclipse Associates v. Cohen,* 908 F.2d 555 (9th Cir. 1990). Propet also acknowledges that Shugart has the right to sell or license to others his copyright rights, whatever they are, because Propet did not execute a written contract with Shugart. However, Propet should still keep its right of use, even if Shugart is somehow able to convey his ownership rights to others or license others.

Propet's president will testify that Propet has produced every document it has in connection with its relationship with Shugart. Propet has no signed or other executed agreements with Shugart. Propet was unaware of seals attached to boxes or film delivery memos. Propet was unaware of special limits Shugart intended to impose on Propet. Propet would not have agreed to the terms of the memo, or other special limitations, if Propet had known about them.

Finally, even if Propet is bound by the memo, Shugart has produced no evidence that Propet breached it. According to Shugart, his memo limits Propet's use of Shugart photographs to two years. It is undisputed that Propet terminated its relationship with Shugart in 2005. Even though Propet had license rights for another two years (until 2007), Propet promptly proceeded to hire other photographers and replace photographs taken by Shugart.

PROPET USA, INC.'S TRIAL BRIEF- 7
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

B.  **SHUGART HAS NO EVIDENCE THAT PROPET KNOWINGLY REMOVED ANY "COPYRIGHT MANAGEMENT INFORMATION" FROM DIGITAL PHOTOGRAPHS**

Shugart has no evidence that demonstrates how he applies "copyright management information" to his works. No "copyright management information" seems to appear on his trial exhibits. Shugart has no evidence that Propet knowingly or intentionally removed "copyright management information" - which is a requirement for liability under the Digital Millennium Copyright Act ("DMCA"). Propet's president will testify that Propet lacks knowledge about these matters.

C.  **PROPET HAS RETURNED ALL PHOTOGRAPHS AND NEGATIVES IN ITS POSSESSION TO SHUGART**

Propet's president will testify that Propet has returned to Shugart all film Propet could locate. Propet still has certain digital photographs that are on a Propet computer. Propet printed all of these images and made them available for Shugart's inspection in the Fall 2006. Shugart did not bother to inspect them.

D.  **SHUGART'S CLAIMS ARE BARRED BY WAIVER, UNCLEAN HANDS, AND THE STATUTE OF LIMITATIONS.**

Propet's president will testify that Propet made use of Shugart's photographs for about five years without complaint. Shugart never raised issues relating to his memo or other alleged breaches until after Propet terminated its relationship with Shugart.

E.  **SHUGART HAS NO DAMAGES**

At the Court's direction, the parties have provided the Court with a brief on damages. To summarize Propet's brief on damages, Shugart has never provided to Propet a calculation of his damages on any of his counterclaims. Shugart has no evidence of actual

PROPET USA, INC.'S TRIAL BRIEF- 8
(C06-0186 MAT)

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

damage on any of his counterclaims. Shugart has no evidence that Propet profited from the sale of his copyrighted images or the like. Shugart has no evidence of a causal relationship between Propet's use of Shugart's photographs and the profits Propet made from shoe sales. Even if he can prove that Propet does not have an implied license, Shugart is not entitled to statutory damages for copyright infringement because he did not seek copyright registrations until after this action commenced. Shugart apparently has copies of all the photographs which are the subject of this action and therefore cannot claim actual damage based on "loss." This leaves Shugart with the DMCA as Shugart's last claim for any damages in this case.

As explained in Propet's brief on damages, under the DMCA, if Shugart can prove that he embedded "copyright management information" in digital files that he supplied to Propet, and if he can prove that Propet knowingly and intentionally removed or altered his "copyright management information," then Shugart may be entitled to statutory damages for each act of removal that he can prove. However, Shugart has no evidence that supports a DMCA claim.

**F.    DECLARATORY JUDGMENT**

Even thought Propet has taken steps to remove all Shugart photographs, Propet cannot account for all uses of Shugart photographs. Accordingly, Propet seeks a declaratory judgment that Propet is licensed to use the photographs Propet paid for and use them in all reasonable ways related to Propet's business, including the right to provide Shugart's photographs of Propet shoes to third party users for the purpose of advertising Propet shoes.

**G.    A PERMANENT INJUNCTION SHOULD ISSUE**

Propet seeks an injunction that (1) prohibits Shugart from selling or offering for sale any Propet photographs in any way that disparages Propet; and (2) prohibits Shugart from threatening customers with copyright infringement actions.

PROPET USA, INC.'S TRIAL BRIEF- 9
(C06-0186 MAT)

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1

1  DATED this 17th day of September, 2007.

2

3

4  /s/ Bruce A. Kaser
Bruce A. Kaser
WSB No. 13532
5  Vantage Law PLLC
355 N.W. Gilman Blvd., Suite 203
6  Issaquah, Washington  98027
bruce@vantagelaw.net
7  (425) 391-8741

8  Attorneys for Plaintiff
Propet USA, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PROPET USA, INC.'S TRIAL BRIEF- 10
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

SEADOCS:292414.1

1  I hereby certify that on this 17th day of September, 2007, I electronically filed PROPET USA, INC.'S TRIAL BRIEF with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

| | |
|---|---|
| Philip P. Mann<br>MANN LAW GROUP<br>1420 Fifth Avenue, Suite 2200<br>Seattle, Washington 98101<br>(206) 274-5100<br>mannlaw@comcast.net<br>phil@mannlawgroup.com<br>eryn@mannlawgroup.com | John Whitaker<br>WHITAKER LAW GROUP<br>755 Winslow Way East, Suite 304<br>Bainbridge Island, WA 98110<br>john@wlawgrp.com<br>(206) 319-1575 |

Executed at Seattle, Washington, this 17th day of September, 2007.

*/s/ James L. Phillips*
James L. Phillips, WSB No. 13186
MILLER NASH LLP
Email: james.phillips@millernash.com

Attorneys for Plaintiff
Propet USA, Inc.

PROPET USA, INC.'S TRIAL BRIEF - 1
(C06-0186 MAT)

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

SEADOCS:292414.1