01

02

03

04

05

06

07                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
08                              AT SEATTLE

09  PROPET USA, INC.,                    )    CASE NO. C06-0186-MAT
                                         )
10          Plaintiff,                   )
                                         )
11          v.                           )    ORDER DENYING PLAINTIFF'S
                                         )    RENEWED MOTION FOR
12  LLOYD SHUGART,                       )    JUDGMENT AS A MATTER OF LAW
                                         )    AND MOTION FOR A NEW TRIAL
13          Defendant.                   )
    _____  )

14

15                            INTRODUCTION

16          A jury found in defendant Lloyd Shugart's (hereinafter Shugart) favor on his three

17  counterclaims – copyright infringement, violation of the Digital Millennium Copyright Act

18  (DMCA), and stolen/lost photographs. (Dkt. 136.)  In so finding, the jury concluded that plaintiff

19  Propet USA, Inc. (hereinafter Propet) did not have an unlimited license to use photographic

20  images taken by Shugart. (*Id.*)  Pertinent to this finding was a film delivery memo Shugart

21  testified accompanied all of his copyrighted images and expressly limited Propet's use of the

22  images, including, among other terms, a two-year duration of the license to use the images and a

ORDER
PAGE -1

01  requirement that the images be returned to Shugart. (*See generally* Trial Transcript at Dkts. 147

02  & 148.) Shugart also testified as to a seal on all film delivery packages that asserted his exclusive

03  rights and indicated that Propet's use and license was subject to all terms of the film delivery

04  memo. (*Id*.)

05         Now before the Court is Propet's Renewed Motion for Judgment as a Matter of Law and

06  Motion for a New Trial. (Dkt. 143).  Having considered the papers filed in support and in

07  opposition to this motion, along with the remainder of the record, the Court hereby finds and

08  concludes as follows.

09                                                   DISCUSSION

10         Propet renews its motion for a judgment as a matter of law pursuant to Federal Rule of

11  Civil Procedure 50(b).  A judgment as a matter of law is warranted upon the Court's conclusion

12  "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

13  on [an] issue[.]" Fed. R. Civ. P. 50(a).  Stated another way, "[j]udgment as a matter of law is

14  appropriate when the evidence, construed in the light most favorable to the nonmoving party,

15  permits only one reasonable conclusion, which is contrary to the jury's verdict." *Omega Envtl. v.*

16  *Gilbarco, Inc.*, 127 F.3d 1157, 1161 (9th Cir. 1997) (citing *Vollrath Co. v. Sammi Corp.*, 9 F.3d

17  1455, 1460 (9th Cir. 1993)).

18         Propet also moves for a new trial pursuant to Rule 59.  In deciding such a motion, the

19  Court looks to historically recognized grounds, including, but not limited to, "claims 'that the

20  verdict is against the weight of the evidence, that the damages are excessive, or that, for other

21  reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729

22  (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  The

ORDER
PAGE -2

01 | Ninth Circuit Court of Appeals has held that "'[t]he trial court may grant a new trial only if the

02 | verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence,

03 | or to prevent a miscarriage of justice.'" *Id.* (quoting *Passantino v. Johnson & Johnson Consumer*

04 | *Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).  This Court has "'the duty . . . to weigh the

05 | evidence as [the Court] saw it, and to set aside the verdict of the jury, even though supported by

06 | substantial evidence, where, in [the Court's] conscientious opinion, the verdict is contrary to the

07 | clear weight of the evidence.'" *Id.* (quoted sources omitted).

08 | In this case, the Court finds no basis for either granting Propet a judgment as a matter of

09 | law or ordering a new trial.

10 | A.    Copyright Infringement:

11 | As agreed by the parties, to prove copyright infringement, the copyright owner must prove

12 | ownership and copying.  *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991).

13 | "Because direct copying is difficult to prove, a [copyright owner] can satisfy the second element

14 | by demonstrating that (a) the [infringing party] had access to the allegedly infringed work and (b)

15 | the two works are substantially similar in both idea and expression of that idea." *Id.*

16 | Propet asserts the insufficiency of the evidence to establish copying in this case.  It notes,

17 | for example, that although testifying as to a total of twenty eight infringements found on Propet's

18 | website, Shugart provided testimony specific as to only six such instances and, with respect to two

19 | of those instances, pointed to a picture that did not reflect one of his copyright registered

20 | photographs and which he maintained, instead, was linked to such a photograph.  (Dkt. 147 at

21 | 143-51.)  Propet argues that this evidence, as well as testimony and evidence as to other purported

22 | instances of infringement, is legally insufficient to prove copyright infringement or to support the

ORDER
PAGE -3

01 $500,000 statutory damages award.  Also, with respect to that award, Propet asserts the absence

02 of any finding of willful infringement and avers that the amount – some forty times the $12,800

03 award of actual damages – is so excessive as to be unconstitutional.  *See State Farm Mut. Auto.*

04 *Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[I]n practice, few awards exceeding a

05 single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy

06 due process.")

07        The Court first notes that, although instructed as to the range of damages available for

08 copyright infringement generally and for infringement deemed willful or innocent (Dkt. 128 at 32-

09 34), the verdict form did not require the jury to specify the range it utilized in rendering its

10 statutory damages award (Dkt. 136 at 2-3).  Accordingly, the jury may have found Propet's

11 infringement willful and, consequently, found Shugart entitled to as much as $150,000 for each

12 work found willfully infringed.  *See* 17 U.S.C. § 504(c)(2).  Therefore, even taking Propet's

13 depiction of the evidence offered by Shugart as to only four instances of copying on Propet's

14 website, the jury's award may be explained.

15        The jury also had before it other evidence supporting a finding of infringement and the

16 damages awarded.  For example, Shugart testified as to numerous instances of infringement on

17 third party websites and in Propet's catalogs.  (Dkt. 147 at 158-65.)  Although Shugart did not,

18 as with Propet's website, provide a specific comparison between each of those images and

19 corresponding images on his copyright registrations,[1] the jury had all of the relevant

20

[1] In order to recover statutory damages, the copyrighted work must have been registered
21 prior to the commencement of the infringement, unless the registration is made within three
months after the first publication of the work.  17 U.S.C. § 412;  *Polar Bear Prods. v. Timex*
22 *Corp.*, 384 F.3d 700, 708 n.5 (9th Cir. 2004) ("Because Polar Bear did not register its copyright

ORDER
PAGE -4

01  documentation as exhibits to consider.  Also, Propet's only witness – Jack Hawkins, the President

02  of Propet – repeatedly testified as to his belief that Propet owned all of the images at issue and

03  conceded that Shugart's images were shared with third parties.  (Dkt. 148 at 327-30, 383-85,

04  402.)  While not proving infringement, this testimony, taken together with all of the above, may

05  have been relevant to the jury's determination.   Additionally, although Hawkins countered

06  Shugart's testimony in asserting that Propet's website did not contain any of Shugart's images and

07  that he believed all of the images had been reshot and replaced (*id*. at 388-90), the jury may well

08  have considered the absence of any supporting documentation or testimony, such as that from the

09  photographer(s) who purportedly reshot Shugart's images.

10         Finally, the case cited by Propet in support of its argument that the statutory damages

11  award is unconstitutional is inapposite to the election of damages in a copyright infringement

12  action.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 424-26 (discussing awards of punitive

13  and compensatory damages in a case involving an insurance dispute).  As the Court recently noted

14  in denying Propet's assertion of equitable defenses, "[b]ecause awards of statutory damages serve

15  both compensatory and punitive purposes, a plaintiff may recover statutory damages 'whether or

16  not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped

17  by Shugart,' in order '"to sanction and vindicate the statutory policy" of discouraging

18  infringement.'" *Los Angeles News Serv. v. Reuters TV Int'l*, 149 F.3d 987, 996 (9th Cir. 1998)

19  (internal citations to quoted sources omitted); *accord Columbia Pictures Indus. v. Krypton Broad.*

20

_____

21  before infringement, it can recover only actual damages and profits under § 504(b), not statutory

22  damages under  § 504(c).")  In this case, the copyright registration date of April 10, 2006
    controlled.

01   *of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) ("A plaintiff may elect statutory

02   damages 'regardless of the adequacy of the evidence offered as to his actual damages[.]'")

03   (quoting 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.04[A]).

04        In sum, Propet fails to support its contention as to a legally insufficient evidentiary basis

05   for the jury's copyright infringement finding and statutory damages award, or to demonstrate that

06   the damages were excessive.  Propet is not entitled to either a judgment as a matter of law or a

07   new trial on the copyright infringement counterclaim.

08   B.    DMCA:

09        The DMCA provides that:

10        No person shall, without the authority of the copyright owner or the law--

11            (1) intentionally remove or alter any copyright management information,

12            (2) distribute or import for distribution copyright management information
                 knowing that the copyright management information has been removed or
13            altered without authority of the copyright owner or the law, or

14            (3) distribute, import for distribution, or publicly perform works, copies of
                 works, or phonorecords, knowing that copyright management information
15            has been removed or altered without authority of the copyright owner or the
                 law,

16
        knowing, or, with respect to civil remedies under section [17 USCS § 1203], having
17      reasonable grounds to know, that it will induce, enable, facilitate, or conceal an
        infringement of any right under this title.

18

19   17 U.S.C. § 1202(b).  In this case, although Shugart averred violations of all three prongs of

20   § 1202(b) in his DMCA counterclaim (Dkt. 13 at 9), it was apparent at trial that he alleged the

21   intentional removal of his copyright management information in violation of § 1202(b)(1).  The

22   verdict form reflected as such, asking whether Propet knowingly or intentionally removed any

ORDER
PAGE -6

01  copyright management information from Shugart's photographs.  (Dkt. 136 at 2.)

02         Propet asserts that Shugart failed to proffer evidence that it intentionally removed

03  copyright management information and that the removal was done to induce, enable, facilitate, or

04  conceal an infringement, and argues that such failure is fatal to this counterclaim.    *Gordon v.*

05  *Nextel Communs.*, 345 F.3d 922, 927 (6th Cir. 2003); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d

06  1116, 122 (C.D. Cal. 1999),  *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir.

07  2003).  It maintains that Shugart's testimony that Ken Johnson, a former employee of Propet, had

08  software that enabled him to remove copyright management information was legally insufficient

09  to establish that Johnson knowingly and intentionally did anything to induce, enable, facilitate or

10  conceal an infringement.  Propet further notes that Shugart failed to, for example, introduce

11  evidence showing images with his copyright management information and images from Propet's

12  website with that information removed, and asserts that Shugart, instead, simply testified that it

13  occurred more than two hundred times (*see* Dkt. 147 at 171).  Propet argues that the $500,000

14  jury award on this counterclaim was unreasonable, does not represent substantial justice, and is

15  excessive and against the weight of the evidence.

16         As noted by Shugart, in addition to establishing that Propet intentionally removed

17  copyright management information, Shugart was required only to establish that Propet had

18  "reasonable grounds to know" that the removal would induce, enable, facilitate or conceal an

19  infringement.  17 U.S.C. § 1202(b).  Shugart avers that the jury had ample evidence upon which

20  to base a conclusion that those reasonable grounds existed.  He points to evidence of Propet's

21  awareness as to issues of copyright, including the fact that it attached its own copyright notice to

22  posters created based on Shugart's images and Hawkin's testimony that Propet routinely hired

ORDER
PAGE -7

01   specialized legal counsel in intellectual property matters (Dkt. 148 at 306-07, 313-14), the fact

02   that Propet is a multinational corporation with sales approaching thirty million dollars annually (*id.*

03   at 336), and evidence Johnson had actual knowledge of Shugart's copyright ownership in the

04   images, such as that supporting the contention that  Johnson requested a release to allow Propet

05   to scan images and used the film delivery memo as the release (Dkt. 147 at 121-22).  The Court

06   agrees that this and the totality of the evidence presented provided a sufficient basis for the jury

07   to conclude that Propet had reasonable grounds to know that the removal of copyright

08   management information would induce, enable, facilitate, or conceal an infringement.

09         Shugart further points to evidence supporting his claim that Propet intentionally removed

10   his copyright management information, including his testimony that every digital image he

11   delivered to Propet contained embedded copyright management information, that the information

12   was embedded automatically by his digital camera, and that Johnson had the knowledge, expertise,

13   and tools that would allow the removal of such information from digital images.  (*Id*. at 170 and

14   232.)  He also asserts the absence of evidence to the contrary, other than Harkin's testimony that

15   he had no knowledge that any copyright management information had been removed and that he

16   did not think Propet had the personnel who would know how to remove it.  (Dkt. 148 at 391.)

17         Again, the Court agrees that there was a sufficient evidentiary basis upon which the jury

18   could conclude that Propet intentionally removed Shugart's copyright management information.

19   In addition to the above, Shugart described the technique he utilized in determining that more than

20   two hundred of his images had his copyright management information removed, a technique which

21   involved opening up each image in a meta data editor and seeing that the copyright management

22   information had been stripped.  (Dkt. 147 at 165-68.)  He further described the process by which

ORDER
PAGE -8

01   the information would be removed, the type of software that could be utilized to remove the

02   information, and the fact that Johnson had that software and utilized it to create and resize images

03   for Propet's catalogs and website.  (*Id*. at 169-71 and 232-33.)  Taken as a whole, the evidence

04   provided a sufficient foundation upon which to conclude that Propet violated § 1202(b)(1) of the

05   DMCA.

06        The cases cited by Propet in support of its DMCA arguments are readily distinguishable.

07   In one case involving § 1202(b)(3), the court concluded that, if § 1202(b)(1) had applied, the

08   plaintiff would have failed to show that any removal of copyright management information was

09   intentional, as opposed to an unintentional side effect of the "'visual search engine'" at issue in that

10   case.  *Kelly*, 77 F. Supp. 2d at 1122.  The search engine retrieved only "'thumbnail'" images

11   without the corresponding descriptive text, wherein the copyright management information for the

12   images was contained.  *Id*. at 1117.  There was no evidence presented in this case that would

13   support the removal of copyright management information in a similar circumstance.  In the other

14   case cited, the court noted the absence of any evidence to counter testimony that the party accused

15   of violating the DMCA had no reason to know that the removal of a copyright notice would

16   facilitate or conceal an infringement.  *Gordon*, 345 F.3d at 927 ("Rather, when Crossroads

17   obtained the poster from the prop company, its personnel believed that the poster had been cleared

18   for use in television commercials. . . .  Furthermore, McCarthy asserts that it was his practice to

19   obtain permission from an artist if the artwork was not obtained from a prop house, and that he

20   would have sought Gordon's approval if he thought there was a clearance issue in this case.")

21   Here, in contrast, Shugart's testimony remained substantively undisputed.

22        Finally, as argued by Shugart, the evidence provided sufficient support for the damages

01  award.  That is, based on Shugart's testimony as to an excess of two hundred images and the fact

02  that the jury could have awarded statutory damages of between $2,500 and $25,000 per violation,

03  17 U.S.C. § 1203(c)(3)(B), the $500,000 damages award may be explained.

04      As with the copyright infringement counterclaim, Propet fails to support its contentions

05  as to the DMCA finding and award of damages.  Propet is not entitled to either a judgment as a

06  matter of law or a new trial on the DMCA counterclaim.

07  C.    Stolen/Lost Photographs:

08      Propet contends that the counterclaim as to stolen/lost photographs is legally deficient as

09  a matter of law.  It points to the language specific to this counterclaim in Shugart's pleading – that

10  Shugart had demanded the return of all images provided to Propet, that Propet had returned only

11  some of those images, and that Shugart was entitled to compensation for the theft or loss of the

12  images not returned (Dkt. 13 at 9-10) – and asserts the absence of any cognizable cause of action.

13  Propet maintains its inability to prepare a defense given this inadequate pleading and rejects the

14  Court's previous recognition that the claim arose out of the film delivery memo, asserting this was

15  never plead by Shugart.  Propet further asserts that the jury's $303,000 award was based on

16  speculation and excessive given an absence of evidence proffered and absence of instructions as

17  to the elements of proof.  However, all of these arguments fail.

18      Under the terms of notice pleading, Federal Rule of Civil Procedure 8(a)(2) requires only

19  "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific

20  facts are not necessary; the statement need only '"give the Shugart fair notice of what the . . .

21  claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)

22  (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting     *Conley v.*

01   *Gibson*, 355 U.S. 41, 47 (1957)).

02          In arguing the insufficiency of Shugart's pleading, Propet attempts to divorce the language

03   specific to this counterclaim from the remainder of the pleading.   Throughout the Answer and

04   Counterclaim Shugart clearly set forth his position that Propet's use of the images at issue was

05   subject to a limited license, the terms of which were contained within the film delivery memo, and

06   that Propet failed to comply with the terms of that license.   (*See*, *e.g.*, Dkt. 13 at 3 (asserting

07   Shugart had a license to use the images and denying the absence of a written agreement) and at

08   7 ("Propet USA's use of images has always been subject to the terms of a written agreement, the

09   Film Delivery Memo.   That agreement defines rights and ownership of the film and all images

10   created.   The Film Delivery Memos were transmitted by Shugart with the final film and invoice

11   to Propet USA.   At all times, Shugart has granted only a limited license to Propet USA for certain

12   usages by Propet."))   The pleading as a whole may be read to relate the stolen/lost photographs

13   counterclaim to the dispute over the film delivery memo, which called for the return of all

14   photographic materials supplied by Shugart and assigned value to lost or damaged materials.   As

15   such, Propet had sufficient notice as to this counterclaim.

16          Nor was the jury insufficiently instructed.   Ten different instructions addressed the dispute

17   as to a contract and the license at issue in this case (Dkt. 128 at 17-26) and an additional

18   instruction specifically pertained to the stolen/lost photographs counterclaim (*id*. at 39 ("If you

19   find that Propet did not have an unlimited license and failed to return film and/or images that were

20   owned by Mr. Shugart and that had been delivered to Propet, then you should ascertain a value,

21   if any, for each such lost film and/or image.   The value you attach to the lost film and/or images

22   should be based on the evidence that was presented at trial."))   Propet fails to demonstrate the

ORDER
PAGE -11

01  insufficiency of these instructions.

02        Propet also fails to support its contention that the jury award was speculative or excessive.

03  As argued by Shugart, the jury had before it not only Shugart's undisputed testimony as to 972

04  films not returned (Dkt. 147 at 171-74),[2] but also relevant documentary evidence, including

05  invoices itemizing all of the film Shugart sent to Propet (Trial Exhibit 65) and a box returned to

06  Shugart containing only a portion of the total amount of film (Trial Exhibit 48.1).

07        The jury had a sufficient evidentiary basis to find for Shugart on the stolen/lost

08  photographs counterclaim and to find Shugart entitled to the amount of damages awarded.  Again,

09  Propet is not entitled to either a judgment as a matter of law or a new trial as to this counterclaim.

10  D.    Film Delivery Memo:

11        Propet also requests that the Court set aside the jury's finding that it did not receive an

12  unlimited license.  Pointing to Shugart's admission that he entered into oral agreements to take

13  photographs for Propet (Dkt. 147 at 211-13) and the instruction describing the need for mutual

14  assent to contract modification (Dkt. 128 at 25), Propet asserts the absence of any evidence it

15  assented to the additional terms contained within the film delivery memo.  Propet avers that it was

16  unreasonable for the jury to conclude that it agreed to modify its oral contract with Shugart, that

17  substantial justice has not been done through the enforcement of the film delivery memo, and that

18  the verdict is against the weight of the evidence.

19        Shugart responds that this argument must be rejected because it was not presented in

20  Propet's original motion for a judgment as a matter of law.  However, the argument was discussed

21  _____

22        [2] As noted above, Hawkins repeatedly testified as to his belief that Propet owned all of the
    images at issue.  (Dkt. 148 at 327-30, 383-85, 402.)

01 at least indirectly at trial, at the prompting of the Court.  (Dkt. 148 at 351-55.)  Yet, even if

02 appropriately considered here, the Court finds no basis to support Propet's motions with respect

03 to this issue.

04     The jury was instructed on the factors pertinent to contract formation, including a promise,

05 mutual assent, and consideration, as well as factors relating to contract interpretation and

06 modification.  (Dkt. 128 at 18-25.)  The jury instruction pointed to by Propet indicated that, once

07 a contract had been entered into, mutual assent was required for modification, which could be

08 shown through the words or conduct of the parties.  (*Id.* at 25.)  Other instructions similarly

09 directed the jury to consider the conduct of the parties, as well as surrounding circumstances.  For

10 example, the instruction on implication of mutual assent from circumstances stated:

11    A contract may arise by inference or implication from circumstances such as the
      ordinary course of dealing between the parties or the common understanding within
12    a commercial or social setting which shows a mutual intention on the part of the
      parties to contract with each other.  Thus, mutual intention may be deduced from
13    circumstances.

14 (*Id.* at 21.)   The instruction on contract interpretation directed the jury as follows:

15    You are to determine the intent of the contracting parties by viewing the contract as
      a whole, considering the subject matter and apparent purpose of the contract, all the
16    facts and circumstances leading up to and surrounding the making of the contract, the
      subsequent acts and conduct of the parties to the contract, and the reasonableness of
17    the respective interpretations offered by the parties.

18 (*Id.* at 24.)

19     Here, Propet points to testimony as to initial oral agreements regarding photographic

20 projects; the testimony does not reflect Shugart's admission that a contract was formed and/or

21 finalized at that time, or that it was not later modified.  (Dkt. 147 at 211-13.)  The jury was

22 presented with evidence as to the conduct of the parties and other circumstances over a number

ORDER
PAGE -13

01 of years.  That evidence included  Shugart's testimony that he included the film delivery memo

02 with each invoice he directed to Propet and the fact that Propet paid each of those invoices.

03 Taking the evidence as a whole and all of the relevant instructions into consideration, the Court

04 concludes that Propet presents only one possible interpretation of the evidence as to the contract

05 at issue in this case.  For example, as reflected in a previous Order, Washington courts recognize

06 the formation of "layered contracts" which may be evidenced by implication through a course of

07 dealing between the parties.  *See*, *e.g.*, *Puget Sound Fin. v. Unisearch, Inc.*, 146 Wash.2d 428,

08 437-38, 47 P.3d 940 (2002) (concluding that, through either a trade usage or course of dealing

09 analysis, limited liability provisions included on search reports and sales invoices could be read into

10 a contract for services; citing *M. A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash.2d

11 568, 571, 584, 998 P.2d 305 (Wash. 2000), as supporting the conclusion that an agreement

12 between two entities "could be interpreted as a 'layered' contract, which incorporates the search

13 reports and sales invoices.")  *See also Discover Bank v. Ray*, 139 Wn. App. 723, 727, 162 P.3d

14 1131 (Wash. Ct. App. 2007) ("[T]he offeror may propose acceptance by conduct, and the buyer

15 may accept by performing those acts proposed by the offeror."; concluding that, where credit card

16 agreement clearly and unambiguously provided that use of the card constituted acceptance of the

17 agreement and the defendant used the card for several years, there was sufficient evidence to

18 establish that the defendant accepted the terms of the agreement through his conduct of using the

19 credit card).

20        In sum, Propet fails to demonstrate that the jury's verdict was unreasonable or

21 unsupported.  Thus, Propet's motions as they relate to the film delivery memo also fail.

22

01  E.    <u>Evidentiary Rulings</u>:

02      Propet asserts error in several evidentiary rulings made by the Court, including the decision

03  to grant Shugart's motion in limine preventing the introduction of state court and bankruptcy court

04  records.  Propet states that these records indicate Shugart has been named as a Shugart some "two

05  dozen times over the years" (Dkt. 143 at 3), a fact relevant to Shugart's credibility, a key issue in

06  this case.  It further states: "While one or two records of this kind might not be probative, the fact

07  that Shugart has many records involving multiple numbers of plaintiffs asserting claims against

08  him, suggests he is not credible."  (*Id*.)

09      Yet, in responding to Shugart's motion in limine, Propet made no mention of two dozen

10  state court matters – it pointed to "several" child support matters and Shugart's bankruptcy

11  proceeding.  (Dkt. 99 at 2-3.)  Had Propet wished the Court to consider other proceedings, it

12  should have briefed the issue accordingly.  Moreover, the Court adds that, in considering Propet's

13  response to Shugart's motion in limine, it found significant that the one example purporting to

14  demonstrate Shugart's lack of credibility in a child support proceeding was not particularly

15  compelling or definitive as evidence that Shugart had deliberately intended to present a falsehood.

16  (*See id*. at 3 (quoting a declaration filed by an attorney in one proceeding stating:  "On December

17  6, 2006, Mr. Shugart appeared before the Mason County Superior Court.   Mr. Shugart

18  represented to the Mason County Superior Court that the Connie White child support obligation

19  was being handled by the King County Prosecutor.  This statement was proven false.  The King

20  County Prosecutor was pursuing Mr. Shugart for not paying child support for a different woman

21  and child.")) The Court stands by its previous conclusion that any probative value of this evidence

22  was substantially outweighed by the potential for prejudice.  Fed. R. Evid. 403.

01    Propet elsewhere in its motion cursorily challenges the admission of various pieces of

02 documentary evidence.  (*See* Dkt. 143 at 5.)  However, again, the Court stands by its rulings.

03 Neither these arguments, nor the argument relating to Shugart's state and bankruptcy court

04 matters warrant a new trial.

05 F.    New Evidence:

06    In its final argument, Propet asserts that the existence of newly discovered evidence

07 justifies a new trial.  It asserts that such evidence (1) must be material and not merely cumulative,

08 (2) could not have been discovered before trial through the exercise of reasonable diligence, and

09 (3) would probably have changed the outcome of the trial.  *Edgar v. Finley*, 312 F.2d 533, 537

10 (8th Cir. 1963).

11    Propet first points to testimony from Shugart as to an unsigned contract.  Propet construes

12 Shugart's testimony as indicating that he gave his former attorney a copy of an unsigned contract

13 between Propet and himself apart from the film delivery memo.  It asserts the significance of such

14 a document to both the claims at issue in this case generally and Shugart's credibility.

15    However, Propet misconstrues Shugart's testimony.  Shugart consistently maintained that

16 he had been unable to find such a document, and explained an answer he gave in a deposition as

17 referring to a copy of his standard contract:

18    Q    And you remember answering me, quote, Well, sure I have an unsigned copy,
        end quote?

19

20    A    Yes.  *And I think you asked about my standard contract.*

21    Q    And you've never produced the unsigned copy either, have you?

22    A    Again, I delivered it to my previous attorney.  I don't know if he delivered it
        to you or not.

ORDER
PAGE -16

01  (Dkt. 147 at 244-47 (emphasis added).)

02      Shugart provides a copy of an unsigned contract between himself and a third party

03  unrelated to Propet and this case, as well as a letter reflecting that that document was produced

04  in April 2007. (Dkt. 154, Ex. A.)  He maintains that this was the document he referred to in his

05  testimony and which was shown to Propet's counsel at trial.  Discussing this issue at trial, Propet's

06  counsel indicated that he had been handed something by Shugart's current counsel. (Dkt. 148 at

07  376.)  Propet does not provide a copy of the document its counsel was shown during trial, nor

08  does it otherwise support the suggestion that there is a copy of an unsigned contract between the

09  parties in the possession of Shugart or his former or current counsel.  This argument does not

10  support the existence of new evidence warranting a new trial.

11      Propet also seeks a new trial based on the existence of a matrix of damages Shugart

12  attempted to introduce into evidence at trial.  It notes that it repeatedly sought to obtain such a

13  document prior to trial and avers that a new trial should be ordered given that Shugart was

14  allowed to testify about information contained in the matrix.  However, the Court sustained

15  Propet's objection to the admission of this evidence at trial. ( *Id*. at 301-03.)  Propet fails to

16  explain why, given that it succeeded in its objection to this evidence, a new trial would now be

17  warranted.  Accordingly, the Court finds no basis for granting Propet's motion for a new trial

18  based on newly discovered evidence.

19                                CONCLUSION

20      For the reasons described above, the Court hereby DENIES Propet's renewed motion for

21  a judgment as a matter of law and motion for a new trial. (Dkt. 143.)  The Clerk is directed

22  / / /

ORDER
PAGE -17

01  to send copies of this Order to counsel for Propet and Shugart.

02       DATED this <u>13th</u> day of December, 2007.

03

04                                      _____
                                        Mary Alice Theiler
                                        United States Magistrate Judge
05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER
PAGE -18